FILED

2026 Mar-25  AM 08:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**FOY D. KIRKLAND,**
   Plaintiff,

**v.**

**THOMAS J. VILSACK,**
*Secretary, Department of*
*Agriculture***, et al.,**
   Defendants.

**Case No. 5:24-cv-538-CLM**

## MEMORANDUM OPINION

Until he resigned in 2024, Plaintiff Foy Kirkland worked for the Natural Resources Conservation Service ("NRCS"), an agency the United States Department of Agriculture ("USDA"), alongside the Morgan Soil and Water Conservation District ("MSWCD"). Kirkland sues the USDA Secretary and five individual members of the MSWCD. Kirkland pleads three counts: (1) Defendants discriminated against him because of his age; (2) Defendants retaliated against him for reporting the discrimination; and (3) the five individual members of the MSWCD defamed him. All Defendants move to dismiss Kirkland's claims under Rule 12. (Docs. 38, 68). For the reasons explained below, the court **GRANTS** their motions.

## BACKGROUND

Defendants move to dismiss Kirkland's complaint under Rule 12. So the court draws its facts from Kirkland's Third Amended Complaint, (doc. 34), and views them in the light most favorable to Kirkland.

### I. Factual Background

Kirkland is a 72-year-old former District Conservationist with the NRCS. During the relevant period, Kirkland supervised the NRCS field office in Morgan County, Alabama. In that role, he managed conservation programs, oversaw staff, and served as the primary liaison between NRCS

and the MSWCD, a local governmental entity that worked closely with NRCS to implement federal conservation initiatives. MSWCD operated out of the NRCS office and exercised significant influence over day-to-day operations within that workplace. Kirkland reported to April Hill, an NRCS management official responsible for overseeing multiple northern Alabama counties. Hill, in turn, reported to senior NRCS leadership.

The events underlying Kirkland's claims began when he identified irregularities in the administration of a federally funded conservation program supported by Clean Water Act Section 319 grants. The program relied on grant funding to support conservation initiatives in Morgan County. While reviewing program operations, Kirkland discovered what he believed to be financial irregularities involving an MSWCD-affiliated employee and a member of the MSWCD board. Kirkland concluded that the conduct did not comply with federal grant requirements and could constitute fraud involving federal funds. So he reported these concerns to the appropriate authorities and raised them internally with MSWCD leadership. Following these reports, Kirkland's relationship with MSWCD officials deteriorated.

Shortly after Kirkland raised concerns about misconduct, MSWCD altered the supervisory structure within the NRCS field office. Historically, Kirkland supervised the office's administrative coordinator. In early 2020, however, MSWCD removed that responsibility from Kirkland and reassigned it someone else. An MSWCD official justified the decision by stating that Kirkland would soon be retiring and that the change would ease his workload. Kirkland objected, explaining that he had not indicated an intent to retire and that the change constituted an unwanted reduction in his responsibilities. But MSWCD implemented the change anyway. Kirkland alleges that this action represented the first step in a broader effort to marginalize him within the workplace as he approached retirement age.

Following the restructuring, MSWCD officials began submitting complaints about Kirkland to his supervisor, April Hill. These complaints

were frequently relayed through a newly-hired administrative employee who, according to Kirkland, acted at the direction of MSWCD board members. In May 2020, Hill issued Kirkland his first "conduct caution" based on these complaints—marking the first disciplinary action of his nearly 40-year career. Additional complaints followed over the next year, resulting in continued scrutiny and further cautionary communications from Hill. Kirkland alleges that many of these complaints were baseless and pretextual. He further contends that Hill was aware that the complaints were meritless but nevertheless relied on them to justify disciplinary action against him.

By 2022, MSWCD's efforts escalated to an explicit attempt to remove Kirkland from his position. In May 2022, MSWCD sent a formal request to Hill that Kirkland be removed as District Conservationist. The request included numerous statements about Kirkland's conduct that he alleges were false and defamatory. Kirkland contends that these statements were made in retaliation for his earlier reports of financial irregularities and workplace misconduct and were intended to damage his professional reputation within NRCS and the broader agricultural community.

Following MSWCD's request for his removal, Kirkland continued to report concerns about MSWCD officials to NRCS leadership. He alleges that Hill responded with hostility and failed to take corrective action. In August 2022, NRCS implemented a partial separation between MSWCD and the NRCS field office to limit direct interaction between MSWCD officials and Kirkland. Despite this separation, MSWCD continued to submit communications criticizing Kirkland and accusing him of misconduct. Kirkland alleges that MSWCD officials directed others to document his daily activities and report negative information to NRCS management, which in turn led to further internal scrutiny. Kirkland says these actions created a sustained pattern of harassment designed to force him from his position. Kirkland ultimately resigned, but not before filing a formal complaint with the USDA and EEOC.

## II. Procedural Background

This case actually involves two distinct administrative proceedings, and its result turns on the distinction between them.

### A. *EEOC-I* and the Miscellaneous Civil Suit

Kirkland filed his first administrative complaint on August 25, 2022, alleging age discrimination and harassment during his employment with the NRCS/USDA (referred to as "*EEOC-I*"). The USDA investigated the complaint; the matter proceeded to the EEOC; and the EEOC granted summary judgment for the Government on November 22, 2023. The USDA issued a Final Agency Order implementing the EEOC's decision on November 28, 2023. The order notified Kirkland of his rights to either (a) appeal the decision to the EEOC within 30 days or (b) file a civil action in federal district court within 90 days. But Kirland took a third path.

Kirkland let the 30-day window to appeal pass. But rather than file a lawsuit in this court, Kirkland filed a "Motion for Extending Time" directly with this court, asking the court to enter an order "that the time for filing the appeal be extended from February 26, 2024 for 90 days or as the Court may determine." Because Kirkland filed a 2-page motion without a complaint outside of an existing case, the Clerk's Office styled the proceeding as a miscellaneous action, called it *Kirkland v. Vilsack*, No. 4:24-mc-210-MHH ("Misc. Case"), and assigned it to Judge Haikala. During a phone conference, Kirkland's attorney told Judge Haikala that Kirkland wanted extra time to appeal the order to the EEOC and did not intend for the motion "to serve as a civil action in district court." *See* Misc. Case (doc. 6, p. 2-3). Judge Haikala denied the motion because this court lacks jurisdiction to extend EEOC appellate deadlines and thus closed the case. (*Id.*)

### B. *EEOC-II*

During the 30-day window to appeal the *EEOC-I* order, Kirkland filed his second administrative complaint ("*EEOC-II*"). In it, Kirkland alleged retaliation based on his *EEOC-I* activity and challenged the

dismissal of his *EEOC-I* complaint. On January 30, 2024, the USDA issued a Final Agency Decision dismissing the *EEOC-II* complaint in its entirety. The agency concluded that several of Kirkland's allegations constituted impermissible collateral attacks on the EEO process and that the alleged conduct did not rise to the level required to establish a retaliatory hostile work environment.

### C. This Civil Lawsuit

On April 29, 2024, Kirkland filed this case, asking the court to overturn the *EEOC-II* Final Order and asserting claims for age discrimination and retaliation. (Doc. 1). Kirkland then amended his complaint multiple times, eventually adding the MSWCD Defendants and a defamation claim against them. Each amended pleading included additional factual allegations and supporting exhibits that exceed 3,300 pages in total. Kirkland's second amended complaint also referenced the *EEOC-I* complaint and appeared to incorporate events from the first administrative proceeding into the claims asserted in this case.

On February 19, 2025, Kirkland filed a Third Amended Complaint, which now serves as the operative complaint. (Doc. 34). That complaint asserts three claims: (1) Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) Retaliation under the ADEA; and (3) a state-law defamation claim against the individual members of the MSWCD. All Defendants move to dismiss under Rule 12.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss." *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014) (*citing Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008)). The Court can look to the factual record outside the pleadings to adjudicate the abatement issue. *See Bryant*, 530 F.3d at 1376. If a party fails to comply with the charge-filing requirement or the administrative time limits, he cannot assert a claim in court. *See Sheffield v. United Parcel Serv., Inc.*, 403 F. App'x 452, 454 (11th Cir. 2010); *Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1076-77 (M.D. Ala. 2003). And "[o]nce a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

## DISCUSSION

Defendants move to dismiss Kirkland's claims for failure to exhaust administrative remedies, failure to state a claim, and because the complaint is a shotgun pleading. The Defendants are right; the complaint is a shotgun pleading. But the court mentions that glaring problem only briefly in Part II so that it can focus instead on the material problem with the two claims that give this court federal question jurisdiction: Kirkland is trying to use his second EEOC charge and this lawsuit to resurrect the claims from his first EEOC charge that he failed to timely appeal after losing at the agency level. The court proceeds with Kirkland's claims in the order that he pleads them.

## I. Count 1: Age Discrimination

Count 1 alleges age discrimination claim under the ADEA. (Doc. 34, p. 31). The court **DISMISSES** this count because Kirkland failed to follow requisite administrative procedures. The court starts by explaining those procedures, then explains how Kirkland failed to follow them.

### A. The ADEA and Administrative Procedure

The ADEA protects individuals who are at least 40 years of age from age discrimination in employment. 29 U.S.C. § 631(a). The law is clear that to bring an action for age discrimination or retaliation under the ADEA, a plaintiff must first file a timely charge of discrimination with the EEOC or appropriate state or local agency. 29 U.S.C. § 626(d); *see also Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir.2004) ("The ADEA requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before filing a lawsuit."). If the EEOC dismisses a plaintiff's charge of discrimination, the ADEA allows him to bring a civil action within 90 days after the date he receives the notice of dismissal. *See* 29 U.S.C. § 626(e). The 90-day window imposes on complainants some "minimum responsibility ... for an orderly and expeditious resolution" of their claims. *Kerr*, 427 F.3d at 952. The limitation further serves to quell the Eleventh Circuit's "expressed concern over enabling complainants to enjoy a 'manipulable open-ended time extension which could render the statutory minimum meaningless.'" *Id*. "Thus, what is effectively the ADEA's statute of limitations is based on compliance with administrative filing deadlines." *Robinson*, 242 F. Supp. 2d at 1077.

### B. Kirkland's Age Discrimination Claim

Kirkland's Count 1 age discrimination claim stems from his *EEOC-I* charge. (Doc. 9-3, pp. 77-98). In fact, all of the allegations Kirkland raises in the Third Amended Complaint are derived from the *EEOC-I* charge. (*See id*.) But more on that later.

1. *Time bar*: The USDA issued a final order implementing the *EEOC-I* decision on November 28, 2023. (Doc. 9-68). The Agency included a notice advising Kirkland of his right to appeal to the EEOC within 30 days or file an action in federal district court "[w]ithin ninety (90) days of receipt of the final action if no [EEOC] appeal has been filed." (Doc. 9-68, p. 3). The notice sets out the well-settled procedure for bringing an ADEA claim. That is, a plaintiff asserting a claim under the ADEA must file his complaint within 90 days of his receipt of a right-to-sue letter. 29 U.S.C. § 626(e); *Kerr*, 427 F.3d at 951; *Edward v. Shalala*, 64 F.3d 601, 605–06 (11th Cir. 1995) (holding that federal employees must bring claims based on the ADEA within the filing periods provided for a Title VII action, 42 U.S.C. § 2000(e)-16(c)).

But that's not what Kirkland did. He did not file an EEOC appeal within 30 days. Nor did he file a lawsuit with this court within 90 days. Instead, Kirkland filed a second administrative charge (*EEOC-II*) within 30 days and a motion asking this court to extend his time to appeal *EEOC-I* to the EEOC by another 90 days. *See* Misc. Case (docs. 1, 6).

Neither of these actions stopped the clock for filing a lawsuit in this court. So Kirkland's deadline expired on February 26, 2024. Kirkland filed this lawsuit on April 30, 2024, well after the deadline. And, as the court explains later, Kirkland's second administrative complaint (*EEOC-II*) did not contain new allegations of age discrimination; it only alleged retaliation for filing the *EEOC-I* charge. So *EEOC-II* didn't restart the clock for Kirkland to raise his age discrimination claim. As a result, unless the court equitably tolls the statutory deadline, any claim stemming from the *EEOC-I* charge is time barred.

2. *Equitable tolling*: Kirkland recognizes that he missed the window to file a lawsuit that contains the claims he levied in his *EEOC-I* charge. But he blames the untimeliness of his claim on "an unfortunate flurry of confusing activity on the part of Mr. Henson, [Kirkland's former attorney], and Judge Haikala." (Doc. 34, pp. 27-28). Kirkland "asserts that the delay in filing was due to extraordinary circumstances, including the confusion

caused by his former counsel's serious health issues and the subsequent procedural missteps" such that his claim warrants equitable tolling. (Doc. 55, pp. 3-4). The court disagrees.

"Equitable tolling is an extraordinary remedy. As a result, it will not extend to a garden variety claim of excusable neglect." *Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 178 (11th Cir. 2024) (citation modified). A party seeking equitable tolling must prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (quotations omitted). The "extraordinary circumstance" standard is a relatively high bar. Kirkland must show an "abandonment of the attorney-client relationship;" "attorney negligence, and even gross negligence or recklessness, is not an extraordinary circumstance" sufficient for equitable tolling. *Thomas v. Att'y Gen., Fla.*, 795 F.3d 1286, 1291 (11th Cir. 2015).

While the court is sympathetic to Kirkland's former counsel's health issues, the court notes that he filed Kirkland's *EEOC-II* charge and the erroneous "Motion for Extending Time" during the 90-day window to file this lawsuit. So it doesn't appear that counsel was medically unable to satisfy the deadline; he just got it wrong (twice). Attorney error is not the "extraordinary" type of circumstance required for equitable tolling, so the court will not apply that remedy here. As a result, Kirkland's age discrimination claims stemming from his *EEOC-I* charge are untimely. The court therefore **GRANTS** Defendants' motions to dismiss Kirkland's age discrimination claim in Count 1, (docs. 38, 68).

## II. Count 2: Retaliation

In Count 2, Kirkland asserts an ADEA retaliation claim under 29 U.S.C. § 623(d). (*See* Doc. 34, p. 32). Kirkland's retaliation claim, on its face, does not suffer from the same timeliness issue which hindered his age discrimination claim because the retaliation claim arises from Kirkland's second administrative charge, *EEOC-II*. And Kirkland

managed to file this case on the last day of the 90-day deadline. So timeliness isn't the initial problem with this claim.

But Kirkland isn't out of the woods yet. Kirkland has a scope problem: the retaliation allegations in his *EEOC-II* charge don't match up with the claims Kirkland raises in this lawsuit. This is a fatal flaw.

### A. The Law

A plaintiff's judicial complaint following an EEOC charge is limited in scope. "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Anderson v. Embarq/Sprint,* 379 F. App'x 924, 926 (11th Cir. 2010) (internal citations omitted). The Eleventh Circuit has noted that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," but the Circuit has also warned that "allegations of new acts of discrimination are inappropriate." *Id.*

In limited circumstances, an allegation of discrimination in an untimely EEOC charge *may* bleed into a subsequent charge and judicial complaint. "The continuing violation doctrine allows the plaintiff to sue on otherwise time-barred claims if the defendant's actions violate a plaintiff's rights on a repeated or ongoing basis. The doctrine is based on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent." *Jimenez v. U.S. Att'y Gen.,* 146 F.4th 972, 992 (11th Cir. 2025) (citation modified). But as the Eleventh Circuit has explained, the continuing violation doctrine is not without its limits. For example, "[w]hen a defendant takes separate and discrete acts that repeatedly violate the law, the continuing violation doctrine does not apply." *Id.* (quotations and citation omitted).

10

> Determining whether an employee's charge is timely thus requires identifying precisely the unlawful employment practice of which he complains. Each discrete adverse employment decision … is a separate actionable unlawful employment practice that starts a new clock for filing charges alleging that act. Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.
>
> The continuing violation doctrine cannot convert related discrete acts into a single unlawful practice for the purposes of timely filing. Instead, when an employee alleges serial violations, i.e., a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation. Claims of discrimination based on independent discriminatory acts cannot be aggregated to extend the limitations period.

*Id.* (citation modified, highlight added).

The analysis is slightly different in the context of a hostile work environment or constructive discharge claim because those "claims are continuing by their very nature—they are composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 993 (citation modified). However, a "timely filed constructive discharge claim [cannot] resuscitate other time-lapsed claims." *Id.*

> The pivotal question is whether the timely and untimely acts may be fairly considered part of the same claim. To answer this question, [courts] look to whether the timely acts were the same type of discriminatory intimidation, ridicule, and insult that characterized the untimely allegations.
>
> A plaintiff must point to more connecting the incidents than the identity of the employee and of the entity employing the discriminatory decisionmaker. … Separate acts may be treated as part of the same unlawful employment practice if the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."

11

*Id.* at 993-94 (citation modified).

Having set the stage, the court now turns to the retaliation claim in Kirkland's judicial complaint as compared to his charge in *EEOC-II*

### B. Resurrected claims from *EEOC-I*

Because it is the procedural foundation of Kirkland's claims, the court starts with the allegations in Kirkland's *EEOC-II* charge. *EEOC-II* alleges that four NRCS officials retaliated against Kirkland for filing his first *EEOC-I* charge. (*See* docs. 3-3; 3-17). The alleged discriminating officials named in *EEOC-II* are: (1) Terry Crosby, NRCS Chief; (2) James Tillman, NRCS Regional Conservationist; (3) Ben Malone, MRCS State Conservationist; (4) April Hill, MRCS Assistant State Conservationist, Field Operations, North Team; and (5) Traci Lillard, FPAC EEO Specialist, Counselor, and Mediator. (Doc. 3-3, p. 1).

The *EEOC-II* charge lays out four alleged acts of retaliation by the named officials that Kirkland described as Issues 1-4. (Doc. 3-3, p. 2). Specifically, the *EEOC-II* charge alleges that April Hill requested medical documentation stating that Kirkland was cleared to return to work, that Hill told Kirkland he would not receive a new computer until he returned from leave, and that Hill's supervisors did not adequately respond to Kirkland's emails asserting that Hill was discriminating against him, thus allowing the retaliation to continue. (*Id.*) Kirkland also complained that the EEOC decision on *EEOC-I* was erroneous because his EEO counselor, Traci Lillard, mischaracterized his claims. (Doc. 3-3, p. 11).

As the court explained earlier, the proper scope of Kirkland's judicial complaint should be limited to "the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" raised in *EEOC-II*, *Anderson*, 379 F. App'x at 926, because it is the only EEOC charge from which Kirkland timely filed suit. So let's compare the *EEOC-II* retaliation allegations described above to those Kirkland asserted in his operative complaint here:

12

112. The Plaintiff engaged in protected activity when raised concerns about the job performance of Boles, the reduction in Program 319 activity and false timekeeping records.

113. The Plaintiff engaged in protected activity when he raised concerns about the change in his role and Position Description.

114. The Plaintiff suffered an adverse employment action when he was forced to terminate his employment.

115. The Plaintiff suffered an adverse employment action when he lost his supervisory responsibilities.

116. The Plaintiff suffered an adverse employment action when he lost his influence and ability to meet with local farmers and carry out the responsibilities of his Position Description.

117. The Plaintiff was terminated, in part, in retaliation for his protected activity, expressing concern about his job security in response to ageist comments and conduct and a preferential treatment of younger employees by the Defendants.

(Doc. 34, p. 33).

If you're thinking that these allegations sound a bit different from those the court described from the *EEOC-II* charge, you see the problem. They are different. The question is whether "the timely [*EEOC-II*] and untimely [*EEOC-I*] acts may be fairly considered part of the same claim." *Jimenez*, 146 F.4th at 993.

To be fairly considered part of the same claim, the distinct acts Kirkland complained of in his *EEOC-II* charge must be the "same type of discriminatory intimidation, ridicule, and insult that characterized the untimely" *EEOC-I* allegations. *Id.* In other words, the "[s]eparate acts may be treated as part of the same unlawful employment practice if the pre- and post-limitations period incidents involved the same type of

employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 993-94 (citation modified).

They are not, which becomes evident when you view the allegations side-by-side:

|  | **Kirkland's Third Amended Complaint, (Doc. 34).** | *EEOC-II* **Charge, (Doc. 3-3).** |
|---|---|---|
| **Alleged Perpetrators** | Thomas Vilsack, Secretary, Department of Agriculture; Jeff Clark, Hal Lee, Doug Wiggington, Doyle Whitlow, and Billy Abercrombie, Individually and as Members of The Morgan County Soil and Water Conservation District. | Terry Crosby, James Tillman, Ben Malone, and April Hill, all NRCS officials; and Traci Lillard, EEOC Counselor. |
| **Protected Activity** | Kirkland raised concerns about the job performance of Boles, the reduction in Program 319 activity and false timekeeping records.<br><br>Kirkland raised concerns about the change in his role and Position Description. | Kirkland filed the *EEOC-I* charge. |
| **Discriminatory Acts** | Kirkland lost his supervisory responsibilities, his influence, his and ability to meet with local farmers. Kirkland was constructively terminated for expressing concern about his job security in response to ageist comments and preferential treatment of younger employees by the Defendants. | NRCS officials did not respond to Kirkland's emails. Hill requested medical documentation from Kirkland before he returned from medical leave. Hill told Kirkland that he would not receive a computer refresh until he returned from leave. And an EEO counselor did not properly characterize his claims. |

Do the allegations in Kirkland's judicial complaint have anything to do with medical leave? No. What about getting a new computer? No. Supervisors ignoring Kirkland's emails? No, again. The allegations in Kirkland's judicial complaint have no relation to the four discrete retaliatory acts he pleaded to the EEOC in *EEOC-II*. Instead, Kirkland tries to use *EEOC-I* and this resulting lawsuit to resuscitate the time-barred allegations from *EEOC-I*. This he cannot do.

For his part, Kirkland argues that the "allegations of retaliation in *Kirkland II* are inherently connected to the age discrimination claims raised in *Kirkland I*." (Doc. 55, p. 4). But even if that is true, *EEOC-II* asserts four numbered, discrete retaliatory actions. Each one of those acts is clearly distinct from the *EEOC-I* allegations. And "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Jimenez*, 146 F.4th at 992.

The court therefore **DISMISSES** as time barred Count 2 because, in it, Kirkland relies on the allegations he presented the EEOC in his *EEOC-I* charge, not the *EEOC-II* charge.

### C. Additional Pleading Deficiencies

Should Kirkland complain that the court misread or missed some protected activity and retaliatory action that did not stem from *EEOC-I*, and was squarely and fairly presented to the EEOC in *EEOC-II*, then the court alternatively dismisses those portions of Count II for two reasons.

1. *Shotgun Pleading*: Both the *EEOC-II* charge (doc. 1-1) and the operative complaint (doc. 34) are a mess. The court has tried to compare them as best it could. While it is better than the *EEOC-II* charge, the complaint does not comply with Rule 8(a)(2)'s requirement of a "short and plain statement showing that the pleader is entitled to relief." This is especially concerning given that the operative complaint is Kirkland's fourth bite at the apple to plead a sufficient claim.

Kirkland's Third Amended Complaint contains 30 pages of factual allegations, and he has attached thousands of pages of exhibits from his

administrative record. It is difficult, if not unfeasible, to determine how Kirkland's allegations connect to the claims at issue, or where in the maze of administrative proceedings they arise from. This problem is compounded by the fact that each count of Kirkland's complaint is pleaded against "Defendants." But Kirkland is suing six separate individual defendants, not one of whom is named as a discriminating official in either of Kirkland's EEOC charges. Kirkland's claims are impossible for the court to understand and Defendants to defend against. So Count II is alternatively due to be **DISMISSED** as a shotgun pleading.

2. *Constructive Discharge*: Doing its best to parse through *EEOC-I*, *EEOC-II*, and the operative complaint, the court finds that Kirkland's allegations about ignored emails and his new computer *might* be exclusive to *EEOC-II*. But even in a light most favorable to Kirkland, those facts would not prove the constructive discharge claim he pleaded in Count II.

The ADEA prohibits federal employers from retaliating against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding that is statutorily protected. 29 U.S.C. § 633a(a); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008). To prove retaliation, a plaintiff must show that (1) they engaged in a statutorily protected activity, (2) they then suffered an adverse employment action, and (3) a causal connection exists between the two. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Constructive discharge can qualify as an adverse employment action under the ADEA. *See Poole v. Country Club*, 129 F.3d 551, 553 n.2 (11th Cir. 1997). To establish a constructive discharge claim, an employee must show that an employer created working conditions so intolerable that a reasonable person would feel compelled to resign. *See id.* at 553 (citations omitted). This is an objective inquiry, and courts should "not consider the plaintiff's subjective feelings." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). The standard for proving constructive discharge is higher than the standard for proving a hostile work environment and requires pervasive conduct by employers. *See id.*

16

Set aside for a moment that the retaliatory acts Kirkland complains of in his Third Amended Complaint completely depart from the allegations he made in *EEOC-II*. And disregard the possible implications for timeliness or exhaustion that this departure entails. Even if Kirkland had properly raised the allegations from the *EEOC-II* charge (which he didn't), Kirkland still fails to plead a constructive discharge claim. A few ignored emails, a request for medical paperwork to return from leave, or a delay in receiving a new computer do not amount to "pervasive" conduct that is objectively "so intolerable that a reasonable person would feel compelled to resign." *Poole*, 129 F.3d at 553; *Hipp*, 252 F.3d at 1231. So the court would still **DISMISS** Count II for failure to state a claim.

## III. Count 3: Defamation

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. They also have "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But a district court has discretion to decline to exercise supplemental jurisdiction over state-law claims when the district court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004). In fact, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Id.* at 1089.

Having dismissed Kirkland's ADEA claims, all that remains is Kirkland's state-law defamation claim. The court finds that Kirkland's state-law claim is best left for state courts to decide. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966). So the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), **GRANTS** the MSWCD Defendants' motion to dismiss, (doc. 68), and dismisses Kirkland's defamation claim **without prejudice**.

17

## CONCLUSION

For these reasons, the court **GRANTS** Defendants' motions to dismiss Counts 1 and 2 of Kirkland's Third Amended Complaint, (docs. 38, 68), and the court declines to exercise supplemental jurisdiction over Kirkland's Count 3 Defamation claim.

The court will enter a separate order consistent with this memorandum opinion that **DISMISSES** this case **WITHOUT PREJUDICE** and closes this case.

**DONE** and **ORDERED** on March 24, 2026.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

18